UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-cv-61581-KMW
(Bankruptcy Case No. 16-16621-JKO)

SONYA L. SALKIN, *as Chapter 7 Trustee for
Darryl Edwin Williams*,

    Appellant,

vs.

DARRYL EDWIN WILLIAMS,

    Appellee.
_____/

## ORDER

This is an appeal from a June 26, 2018 order entered in the bankruptcy action brought under Chapter 7 of the Bankruptcy Code by Debtor Darryl Edwin Williams ("Appellee"), *In re Darryl Edwin Williams*, No. 16-16621-JKO (Bankr. S.D. Fla.). (BR DE 212).[1] The Bankruptcy Court's order overruled the Trustee's ("Appellant") objection to Williams' claim of exemption under 11 U.S.C. § 522(d)(10)(C) (the "Order"). *Id.* For the reasons set forth below, the Bankruptcy Court's decision is affirmed.

### I.    BACKGROUND

This bankruptcy appeal turns on whether Williams' potential, yet to be determined payments under the National Football League Player's Concussion Injury Litigation Settlement (the "NFL Settlement") are exempt as a "disability benefit" under 11 U.S.C. § 522(d)(10)(C). The bankruptcy case commenced when Appellant filed a Voluntary

---

[1] All references to the docket in this matter are noted as "(DE __)" and all references to the docket in the bankruptcy case are noted as "(BR DE __)."

Petition for Relief under Chapter 7 of the Bankruptcy Code on March 25, 2016. (DE 13 at 10).

"Subject to a few specific exceptions not relevant here, the filing of a bankruptcy petition creates an estate comprised of 'all legal or equitable interest of the debtor in property as of the commencement of the case.'" *In re Daly*, 344 B.R. 304, 309 (Bankr. M.D. Pa. 2005) (citing 11 U.S.C. § 541(a)(1)). "Section 522(b) permits a debtor to claim certain property interests exempt from administration by the trustee, either under relevant non-bankruptcy law or the federal exemptions listed in § 522(d)." *Id*. "Rule 4003(b) permits a trustee, or other party in interest, to file an objection to the list of property claimed as exempt within thirty days of its filing." *Id*. "The objector must then carry the burden of producing evidence that rebuts the presumption that the claimed exemption is valid." *Id*. (citing Fed. R. Bankr. P. 4003(C); Fed. R. Evid. 301; *accord Lampe v. Williamson (In re Lampe)*, 331 F.3d 750, 754 (10th Cir. 2003)).

Appellant appeals the Order overruling the objections to Williams' claimed exemption on two grounds. Appellant first argues that the Bankruptcy Court erred when it overruled her objection to Williams' claim of exemption because any benefits under the NFL Settlement constitute "tort recoveries," rather than "disability benefits." (DE 17 at 8). Second, Appellant argues that the Bankruptcy Court erred because, even if the NFL Settlement constitutes a "disability policy," the Bankruptcy Court should have found that the exemption was pursuant to Subsection 522(d)(10)(E) rather than Subsection 522(d)(10)(C). *Id*. at 21-22.

### A. The Underlying NFL Settlement Litigation

As the Bankruptcy Court notes in the Order, the NFL Settlement "is an agreement between the [NFL] . . . and its players,[2] arising from 'the alleged effects of mild traumatic brain injury allegedly caused by the concussive and sub-concussive impacts experienced by former NFL football players.'" (BR DE 212 at 3) (citing *Class Action Settlement Agreement*, https://www.nflconcussionsettlement.com/Documents.aspx, at 1 (last updated June 18, 2018)).[3] Appellee Darryl Edwin Williams "was a player in the NFL from 1992-2001 for both the Cincinnati Bengals and the Seattle Seahawks." (BR DE 212 at 3, n.1). The Bankruptcy Court thoroughly summarized the relevant terms of the Settlement Agreement:

> It is important to note that the Settlement Agreement explicitly carves out any policies under the League's Collective Bargaining Agreement (CBA); players must pursue claims under these "Original Policies" separately.[4] The Settlement Agreement further provides that the original lawsuits "[sought] to hold the NFL Parties responsible for . . . [failing] to warn and protect them from the *long term health problems associated with concussions* . . . ." *Id.* (emphasis added). The Settlement Agreement allows for a "Monetary Award" for "Qualifying Diagnoses made by properly credentialed physicians." *Id.* at 32. Those Qualifying Diagnoses include: (a) Level 1.5 Neurocognitive Impairment; (b) Level 2 Neurocognitive Impairment; (c) Alzheimer's Disease; (d) Parkinson's Disease; (e) Death with Chronic Traumatic Encephalopathy (CTE); and (f) Amyotrophic Lateral Sclerosis (ALS). *Id.*

---

[2] "The Settlement Agreement provides that '[t]he "Settlement Class" means all Retired NFL Football Players, Representative Claimants and Derivative Claimants.'" (BR DE 212 at 3, n.1) (quoting Settlement Agreement).

[3] "The litigation took place in the District Court for the Eastern District of Pennsylvania." (*Id.*, n.2) (citing *In re National Football League Player's Concussion Injury Litigation*, No. 2:12-md-02323-AB, 2014 WL 11512626 (E.D. Pa. Nov. 12, 2014)).

[4] *See generally* Sections 2.1, 13.3, 18.1, 18.5, and 18.6 of the Settlement Agreement.

3

> The Settlement Agreement provides a Baseline Assessment Program (BAP),[5] whereby players can receive a "baseline assessment examination" from "Qualified BAP Providers" (the "Providers"). *Id.* at 20, 21. The exam includes: (1) a neuropsychological exam that must be done by both a board-certified neuropsychologist and a board-certified clinical neuropsychologist; and (2) a basic neurological exam performed by a board-certified neurologist. *Id.* In order to receive a qualified diagnosis for Level 1.5 or Level 2 Neurocognitive Impairment, the diagnosis must be agreed upon by both the neuropsychologist and the neurologist. *Id.* In the event that no agreement is reached, the BAP Administrator may require that (1) the Providers reconvene to come to a definitive conclusion, (2) another BAP examination be completed, or (3) the matter be referred to an "Appeals Advisory Panel." *Id.* at 30. The decision of the Appeals Advisory Panel is "final and binding."[6] *Id.* In the event a player receives a Qualified Diagnosis, his ultimate compensation will depend upon both his age[7] at diagnosis and his number of eligible seasons.[8] The Settlement Agreement explicitly provides that "All Monetary Awards will be subject to downward adjustments." *Id.* at 36. In turn, if a player receives a qualified diagnosis, he is very likely to receive a revised-down Monetary Award. Of course, in the event that he does not receive a qualified diagnosis and has exhausted all appeals, he will not receive any compensation.

(BR DE 212 at 3-5).

---

[5] Players may receive a Qualified Diagnosis without participating in the BAP, however, their compensation will automatically be subject to a 10% reduction.

[6] Notwithstanding this language, the Agreement does in fact provide a further appeals process, which includes Court involvement; however, because this stage was not reached in the Debtor's case, it is unnecessary to delve into the details.

[7] See Exhibit A-5 to the Settlement Agreement. With regards to Level 1.5 or Level 2 Neurocognitive Impairment, the Agreement provides a 30-39% reduction in compensation across age cohorts. For example, a 55 year-old with Level 2 Neurocognitive Impairment will be eligible to receive $950,000, while a 60 year-old with Level 2 Neurocognitive Impairment will only be eligible to receive $580,000. These discrepancies are non-linear and increase dramatically as one moves into the older cohorts.

[8] See Exhibit A-5 to the Settlement Agreement. The Agreement provides a 10% reduction in compensation for every ½ year reduction in eligible seasons. For example, a player with 4.5 eligible seasons will receive a 10% reduction in compensation while a player with only 4 eligible seasons will receive a 20% reduction in compensation.

4

## II. STANDARD OF REVIEW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1), which grants district courts the jurisdiction to hear appeals "from final judgments, orders, and decrees." *Thacker v. SE Prop. Holdings, LLC*, No. 5:15-CV-00183-MP-CJK, 2016 WL 6039204, at *3 (N.D. Fla. Mar. 21, 2016), *aff'd sub nom. In re Thacker*, 678 F. App'x 815 (11th Cir. 2017). The district court reviews *de novo* the legal determinations of the bankruptcy court, but the court reviews only for clear error the bankruptcy court's factual findings. *See In re Mooney*, 812 F.3d 1276, 1279 (11th Cir. 2016) (citing *In re Cassell*, 688 F.3d 1291, 1294 (11th Cir. 2012), *certified question answered sub nom. Silliman v. Cassell*, 292 Ga. 464, 738 S.E.2d 606 (2013)). "The objecting party, here the [T]rustee, bears the burden of proving that an exemption is improperly claimed." *In re Mooney*, 812 F.3d at 1279; *see also* Fed. R. Bankr. P. 4003(c); Fed. R. Bankr. P. 8013. Because the Bankruptcy Court was interpreting the applicability of a specific bankruptcy code provision to Williams' claimed exemption, the issue here is primarily a matter of law, which this Court reviews *de novo*.

## III. DISCUSSION

In general, federal law governs bankruptcy. *In re Mooney*, 812 F.3d at 1279. Typically, a debtor exempts property from a bankruptcy estate under the Bankruptcy Code. *See* 11 U.S.C. § 522(b)(1). Nonetheless, the Bankruptcy Code permits states to adopt their own lists of exemptions. *See id.* § 522(b)(2). Florida has generally opted out of the federal Bankruptcy Code exemptions and prohibits its debtors from claiming federal exemptions pursuant to Section 522(d). However, Florida Statute Section 222.201 "provides an exception to that general rule, whereby debtors may claim exemptions under

Section 522(d)(10)." (BR DE 212 at 5) (citing 11 U.S.C. § 522(d)(10); Fla. Stat. § 222.201).

Section 522(d)(10) provides, in relevant part, exemptions for the following:

(10) The debtor's right to receive—

    (C) a disability, illness, or unemployment benefit;

    (E) a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

        (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

        (ii) such payment is on account of age or length of service; and

        (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

At issue below was whether the proceeds from the Settlement Agreement fall into either of these exemptions. "As the objecting party, the Trustee has the burden of proving that the Debtor is not entitled to the claimed exemptions." *In re Valentine*, No. 08-12074-JMD (Bankr. D.N.H. 2009) (citing Fed. R. Bankr. P. 4003(c)). Because the Bankruptcy Court found that "the Settlement Agreement provides disability benefits which are exempt under Subsection (C)," (BR DE 212 at 5), the Court found "no need to assess whether the benefits are exempt under Subsection (E)." *Id.*

The Bankruptcy Court and the Parties all agree that—although thousands of former NFL players are part of the NFL Settlement litigation—whether the NFL Settlement payments constitute exempt assets under Section 522(d)(10) is an issue of first impression.

### A. The NFL Settlement payments are exempt under Section 522(d)(10)(C)

The plain language of Section 522(d)(10)(C) requires this Court only to determine whether any payment Appellee receives pursuant to the NFL Settlement is a "disability benefit," as the Bankruptcy Court determined.  After thoroughly reviewing the Parties' submissions, the record from the Bankruptcy Court below, the pertinent portions of the NFL Settlement litigation record, and relevant case law, this Court finds that the Bankruptcy Court did not err when it found that any payment Appellee receives pursuant to the NFL Settlement agreement is fully exempt under Section 522(d)(10)(C).

The only case on which Appellant relies to support the contention that the NFL Settlement payments are not exempt is *Chesley v. Woodard*, 526 B.R. 888, 895 (M.D. Fla. 2014).  Appellant also relied heavily on *Chesley* below, and the Bankruptcy Court rejected its applicability.  In *Chesley*, the court analyzed whether proceeds from a tort claim settlement would be exempt under Section 522(d)(10)(C) and held that "for the exemption to apply . . . it must be established that (1) the proceeds are disability income benefits and (2) these benefits are under a policy." *Chesley*, 526 B.R. at 895. The court in *Chesley* reviewed the specific facts of the settlement agreement at issue and held that the benefits were not exempt under Section 522(d)(10)(C) because Chesley did not show that the benefits were disability income derived from a disability policy. *Id.* at 896.

The decision in *Chesley* is not determinative, or even persuasive, precedent for determining this case, first and foremost because the court there was interpreting an entirely separate exemption provision under Florida law.[9] Florida Statute Section 222.18, states that "[d]isability income benefits under any policy or contract of life, health, accident, or other insurance of whatever form, shall not in any case be liable to attachment, garnishment, or legal process in the state, in favor of any creditor or creditors of the recipient of such disability income benefits, unless such policy or contract of insurance was effected for the benefit of such creditor or creditors." Fla. Stat. § 222.18. This provision is clearly more narrow than the provision at issue here, which exempts, broadly and without qualification, a debtor's right to receive "a disability, illness, or unemployment benefit." 11 U.S.C. § 522(d)(10)(C).

Beyond the textual differences between the Florida exemption provision and the exemption claimed here under Section 522, *Chesley* also involved a very different set of facts than those before the Bankruptcy Court in this case. The debtor in *Chesley* had been injured in a car crash and sought to exempt the proceeds of a settlement agreement. *Chesley*, 526 B.R. at 889. The settlement agreement was in the form of a general release of all claims against a third party as consideration for a payment to Chesley of "$1,200,000.00 . . . for Chesley's injuries sustained from the collision, as lost earning capacity, past medical expenses, future medical expenses and past lost wages or earning capacity." *Id.* (quotations omitted). In short, *Chesley* involved a car crash where the

---

[9] Neither Party has ever argued, here or in the bankruptcy proceedings, that any potential payment under the NFL Settlement is exempt under a Florida statute. Instead, Appellee has consistently asserted that any payment would be exempt under Section 522(d)(10)(C) or (E) of the Federal Bankruptcy Code.

8

parties were (apparently) strangers; the settlement in *Chesley* did not arise out of an employer-employee relationship; the settlement only involved one individual; and the litigation and resulting release involved a payment for injuries that Chesley had *already sustained. Id.*

This case, on the other hand, involves a unique, employer-employee relationship that spanned, for most class members, multiple years. For many players, the occupation involved constant physical contact with other similarly employed players, leading to the injuries that are the subject of the NFL Settlement. There are thousands of class members under the NFL Settlement, many of whom, like Appellee, have not yet received any payment and may never receive any payment unless, unfortunately, they develop one of the specific neurocognitive disabilities outlined in the NFL Settlement.

The Bankruptcy Court rejected Appellant's reliance on *Chesley* and explained that, unlike the settlement agreement in that case, "[t]he Settlement Agreement [here] establishes a new and separate pool of funds, distinct from those established in the Original Policies, and the language within the Settlement Agreement, along with its overall structure, is undeniably indicative of a disability policy." (BR DE 212 at 7). The Bankruptcy Court reasoned that "[t]he Settlement Agreement describes the Debtor's injury as a 'Level 1.5 or Level 2 Neurocognitive Impairment;' a 'neurocognitive impairment' falls within even the narrowest interpretation of the word 'disability.'" *Id.* The Bankruptcy Court also noted the fact that "compensation is directly linked to a player's length of employment."[10] *Id.* Based on all of these facts, the Bankruptcy Court concluded that

---

[10] The Order also notes that "the Settlement Agreement includes a section entitled: 'How does the number of seasons a retired player played affect a monetary award?' This section provides a 'number of eligible

"[t]he Settlement Agreement proceeds are not simple, guaranteed payments, but rather carefully tailored compensation schemes, consistent with and indicative of disability policies." *Id.*

The Bankruptcy Court gave a detailed explanation of why it found—based on the specific facts before it—that the NFL Settlement payments constituted a "disability benefit" under Section 522(d)(10)(C). The Bankruptcy Court found the "most important[]" factor to be "the overall *structure* of the Settlement Agreement and the medical procedures in place to filter claims" because "[t]he Settlement Agreement requires that injured parties be diagnosed by qualified medical professionals before they may be eligible for benefits . . . [and] provides for a Baseline Assessment Program whereby parties may receive an initial medical screening." *Id.* "Contrary to a traditional tort claim settlement, whereby aggrieved parties are *automatically* and *indiscriminately* paid a lump-sum, the Settlement Agreement requires players to jump through a multitude of procedural hoops in order to gain a qualified diagnosis, after which their claim is subjected to additional differentiation and limitations." *Id.* at 7-8 (emphasis in original).

Moreover, the Bankruptcy Court took into account the fact that (1) "[u]nder the Settlement Agreement scheme, compensation is never guaranteed, and there is always a possibility that players do not receive a Monetary Award," (2) "the Settlement Agreement does not just include the Debtor, but hundreds and potentially thousands of former NFL players" and (3) "the Settlement Agreement establishes a 'policy' to

---

seasons' matrix, showing that the longer a player's employment tenure, the higher his potential compensation. Additionally, Exhibit 5 includes a section entitled: 'How does the age of the retired player at the time of first diagnosis affect a monetary award?' This section provides an age-cohort matrix, which shows that older players are only eligible for a significantly reduced Monetary Award." (BR DE 212 at 7).

adjudicate each individual claim on its merits in order to determine whether compensation is warranted." *Id.* at 8. Based on these factors, this Court agrees with the Bankruptcy Court's conclusion that the NFL Settlement "is vastly different from a traditional class action tort claim settlement, where no matter the size of the class, payouts are fully determined *ex-ante* [because] [h]ere . . . the amount of compensation (if any) is only fully determined *ex-post*, after all of the procedural hurdles have been overcome." *Id.*

As the Parties and the Bankruptcy Court all recognized, there appears to be no case law interpreting this provision of the Bankruptcy Code in the context of the NFL Settlement litigation, or even another large settlement class involving a complex payment scheme based on an employer-employee relationship and medical needs arising from such employment. However, two cases—while not from the Eleventh Circuit and thus not binding—are persuasive and relevant to this Court's decision that any payment under the NFL Settlement is exempt under Section 522(d)(10)(C).

*In re Daly*, 344 B.R. 304, 315 (Bankr. M.D. Pa. 2005) involved a trustee's challenge to various claimed exemptions, including an exemption under the same provision here for potential future payments from litigation over an insurance policy. In *Daly*, the trustee had argued that "it is not proper for Debtor to utilize §§ 522(d)(10)(E) [and] 522(d)(10)(C) . . . as the basis of exempting his interests in causes of actions based on alleged breach of contract violations." *Id.* The court disagreed and found that "[t]he mere fact that there is a dispute as to the ownership of an asset does not change the nature of the exemption [because] [t]he only issue the Court must concern itself with is whether an exemption has been properly claimed in any resultant recovery that may arise from the matter being litigated." *Id.* The court also explained that "the legal theories a debtor may rely upon in

order to substantiate an ownership interest does not detract from his ability to assert a proper exemption claim based on his respective interest in the asset in dispute." *Id.* Thus, "the fact that [the] Debtor may have chosen to employ a breach of contract theory to legitimize his property rights in a particular asset is inconsequential." *Id.* "What is material to [a court's] inquiry is whether the substance of any recovery he may reap from these various causes of action may be properly exempted under applicable laws." *Id.* The court then found that "[t]he only issue relevant to Debtor's reliance on § 522(d)(10)(C) is whether his recovery actually represents a disability payment. To the extent that it does, the Court finds Debtor's exemption claim to be proper." *Id.* at 318.

Here, the fact that Appellee's potential payment under the NFL Settlement agreement arises out of the "legal theory" of class litigation is not dispositive because, as the court in *Daly* noted, the real issue is whether "his recovery actually represents a disability payment" or benefit under the statute. *Id.* The Bankruptcy Court found that any payments under the NFL Settlement would, in fact, constitute a disability benefit and this Court agrees with that holding.[11]

The second case this Court finds instructive is *In re Hanh Hieu Dang*, 473 B.R. 218, 220 (Bankr. W.D. Mich. 2012). In that case, the debtor "sustained a job related injury (loss of a finger and part of his hand)" and hired an attorney to handle his worker's

---

[11] This Court also agrees with the Bankruptcy Court's view that "[t]he fact that the Settlement Agreement explicitly carves out all other non-settlement related benefits is of little significance . . . because it has created a *New and Separate Disability Policy*." (BR DE 212 at 8) (emphasis in original). The Bankruptcy Court noted that "the careful and repetitive language used to carve out the Original Policies is indicative of the drafters' concern for the Settlement Agreement's striking similarities to traditional disability policies. Moreover, focusing on the Settlement Agreement's intent to carve out the Original Policies misses the point: the Settlement Agreement establishes a separate pool of money, and more specifically, a *new and separate disability policy*, whereby injured parties can receive compensation." *Id.*

compensation claim based on the injury. *Hanh Hieu Dang*, 473 B.R. at 220. "[A] redemption agreement was entered into by the Debtor, his employer and its insurance carrier." *Id.* "The agreement documented that the Debtor had received injuries, that a dispute existed, and that the parties settled the dispute for a lump sum payment of $193,143.60." *Id.* The debtor claimed an exemption of all of the worker's compensation funds under 11 U.S.C. § 522(d)(10)(C) and (d)(11)(E). *Id.* at 221.

The court held that "[l]ump sum worker's compensation awards may be exempted under 11 U.S.C. § 522(d)(10)(C) when the funds have not yet been received at the time the debtor files his petition for relief under the Bankruptcy Code." *Id.* (citing *In re Williams,* 181 B.R. 298 (Bankr. W.D. Mich. 1995); *Szybist v. Michael (In re Michael),* 262 B.R. 296, 298 (Bankr. M.D. Penn. 2001)). The court found that "[b]ased upon the plain meaning of 11 U.S.C. § 522(d)(10)(C), which states that the 'debtor's *right to receive* . . . a disability, illness, or unemployment benefit' may be exempted, if the award is considered a disability benefit, the Debtor's settlement funds . . . are exempt . . . under 11 U.S.C. § 522(d)(10)(C) and/or 11 U.S.C. § 522(d)(11)(E)." *Id.* at 221-22 (citing 11 U.S.C. § 522(d)(10)(C); *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (finding that if a statute's language is plain and unambiguous, it should be enforced in accordance with its terms) (emphasis in original)). The court also found that it "need not explicitly determine whether the award constituted a disability benefit, a loss of future earnings, or a combination of both . . . [because] [r]egardless of characterization, the entire award is exempt." *Id.* n.1.

As in *Hanh Hieu Dang*, Appellee in this case is entitled to an exemption for any payments under the NFL Settlement because they constitute a disability benefit. It does

13

not matter that the "disability benefit" arose from litigation. Although the debtor in *Hanh Hieu Dang* received payment from a settlement, the underlying right to payment was a disability benefit under his worker's compensation claim. And while this case does not present a worker's compensation claim, the facts are analogous because they involved employer-employee litigation arising out of potential injuries sustained during the class members' course of employment. Despite the fact that the NFL Settlement payments are a product of litigation and a carefully brokered agreement, the character of the payments is at heart a disability benefit, as evidenced by all of the factors cited by the Bankruptcy Court and discussed at length above. Thus, this Court finds that the Bankruptcy Court was correct when it determined that any NFL Settlement payment to Appellee is exempt under Section 522(d)(10)(C).

Because this Court agrees with Appellee that the Bankruptcy Court did not err by finding the NFL Settlement payment to be exempt under Section 522(d)(10)(C), this Court need not analyze whether any NFL Settlement payment is exempt under Section 522(d)(10)(E). Appellant argues that because the exemption under Subsection (E) is limited "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor," and therefore may be "substantially less" than the exemption under Subsection (C), this Court should remand this matter to the Bankruptcy Court to determine "the allowable exemption under Subsection (E)." (DE 17 at 22).

Appellant cites to no case law to support the contention that this Court should or could remand this matter to the Bankruptcy Court to determine an exempt amount under Subsection (E). Indeed, the Court notes that crafting such a remedy appears to be unfeasible given the fact that it is unknown to all parties involved whether Appellee will

ever qualify for a payment, how much any such payment would be, how much of the payment Appellee would need for support should he ever develop one of the neurocognitive disabilities in the NFL Settlement, and how many or who his dependents may be at that time.[12]

Accordingly, this Court agrees with the Bankruptcy Court's finding that any payments under the NFL Settlement are exempt under 11 U.S.C. § 522(d)(10)(C).

## IV. CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** that:

(1) The Bankruptcy Court's order overruling the Trustee's objection to Williams' claim of exemption is **AFFIRMED**.

(2) The Clerk is directed to transmit a copy of this Order to the Bankruptcy Court and **CLOSE** this case for administrative purposes.

**DONE AND ORDERED** in chambers in Miami, Florida, this 26th day of March, 2019.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[12] Moreover, this Court does not find Appellant's argument regarding an evidentiary hearing pursuant to *In re Wegrzyn*, 291 B.R. 2, 9 (Bankr. Mass. 2003) to be persuasive. Appellant suggests that the Bankruptcy Court should be required to "allocate" any payment under the NFL Settlement between "disability and any non-disability elements." To the extent Appellant suggests that the Bankruptcy Court carve out a present value portion of any NFL Settlement payment that is meant to cover Appellee's potential, future "disability" as opposed to any portion of the payment that may be intended as compensation for "tort" claims, such request is untenable. After this Court's thorough review of the underlying NFL Settlement agreement, it does not appear that there would be any means or authority to do so.